794 S.E.2d 395

**Diane HORTON, Executrix of The Estate of Gene Ray Dudding, Plaintiff Below, Petitioner**

v.

**PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC., Defendant Below, Respondent**

No. 15-0692

Supreme Court of Appeals of West Virginia.

Submitted: October 5, 2016

Filed: November 15, 2016

Anthony J. Majestro, Esq., Powell & Majestro, PLLC, Charleston, West Virginia, Benjamin Sheridan, Esq., Klein Sheridan & Glazer, LC, Hurricane, West Virginia, Attorneys for Petitioner.

David P. Cook, Jr., Esq., MacCorkle Lavender, PLLC, Charleston, West Virginia, Attorney for Respondent.

Benjamin, Justice:

The petitioner and plaintiff below, Diane Horton, Executrix of the Estate of Gene Ray Dudding, appeals the June 18, 2015, order of the Circuit Court of Putnam County that granted summary judgment to the respondent and defendant below, Professional Bureau of Collections of Maryland, Inc., in the petitioner's action against the respondent alleging claims for violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A–1–101 to 8–102 ("the Act").[1] After considering the parties' arguments, relevant portions of the appendix, and the applicable law, we affirm the circuit court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2013, Gene Ray Dudding ("the decedent") filed a complaint in the Circuit Court of Putnam County alleging various causes of action against the respondent, Professional Bureau of Collections of Maryland, Inc., arising from the respondent's actions in attempting to collect a debt from the decedent. Significant for the purpose of this appeal, the decedent claimed that the respondent failed to disclose its name to the respondent when making a demand for money upon the decedent's indebtedness in violation of W. Va. Code § 46A–2–127(c).[2]

On July 9, 2014, the decedent died. In September 2014, the respondent filed a Suggestion of Death and a motion for summary judgment. In the respondent's motion for summary judgment, the respondent argued that the decedent's claims under the Consumer Credit and Protection Act do not survive his death pursuant to W. Va. Code § 55–7–8a(a) (1959). The respondent explained that under the Act, it is a consumer that has a cause of action, and consumer is defined in the Act as any natural person obligated or allegedly obligated to pay any debt. Therefore, the respondent concluded that the decedent's claims were extinguished upon his death because the claims are personal to the consumer who owed the debt. Further, the respondent averred that an estate does not have standing to bring a claim under the Act because under the law an estate is not a natural person.

The petitioner subsequently filed a Suggestion of Death and moved to substitute the decedent's estate as plaintiff. In the petitioner's response to the respondent's motion for summary judgment, the petitioner contended that W. Va. Code § 55–7–8a(a) does not extinguish the decedent's claims under the Act. The petitioner posited that both W. Va. Code

---

1. In his complaint below, the decedent also brought claims for negligence, intentional infliction of emotional distress, and invasion of privacy. The circuit court's grant of summary judgment to the respondent on the petitioner's claims for negligence and intentional infliction of emotional distress were not appealed to this Court. The petitioner waived her invasion of privacy claim before the circuit court.

2. W. Va. Code § 46A–2–127 (1997) provides:
   No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section: .... (c) The failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the

claim is owed, at the time of making any demand for money[.]
The decedent also brought claims under W. Va. Code §§ 46A–2–125, -128(e), and -127(a). While the petitioner generally contends on appeal that these violations are analogous to a claim for deceit and fraud under W. Va. Code § 55–7–8a(a), the petitioner fails to develop these arguments. "This Court has previously adhered to the rule that '[a]lthough we liberally construe briefs in determining issues presented for review, issues which are ... mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.' " *State v. Gray*, 217 W.Va. 591, 600, 619 S.E.2d 104, 113 (2005) quoting *State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) (citation omitted). Based on this rule, we decline to address the petitioner's assertions regarding other alleged violations of the Consumer Credit and Protection Act.

§ 55-7-8a(a) and the Act are remedial statutes that should be construed liberally in favor of the plaintiff. The petitioner asserted that it would be unfair to read W. Va. Code § 55-7-8a(a) in a way that extinguishes the decedent's claims under the Act.

In the circuit court's hearing on the respondent's motion for summary judgment, the petitioner hinged his argument against summary judgment on the fact that the decedent was alive when the respondent's complained of acts occurred, and he was alive when his action was filed against the respondent. The petitioner went on to explain:

> So in order to cut [Mr. Dudding] off at this point is a pretty harsh thing because what it says is essentially creditors can wait until somebody is very ill and, perhaps, essentially while they're dying, and then they don't really have much to worry about if they pass away because their claims are cut off immediately upon their death.

> And I don't think that's a liberal construction of the statute. And the Supreme Court said over and over again this must be liberally construed to protect consumers in the State of West Virginia.

In its June 18, 2015, order granting summary judgment in favor of the respondent, the circuit court reasoned that the decedent is not a "natural person" for purposes of the Act. Further, the circuit court found no evidence that any communications from the respondent were directed to the estate or to Ms. Horton in her capacity as executrix of the estate, and there is no evidence that the estate is obligated to pay the alleged debt. Therefore, the circuit court concluded that the estate lacks standing to maintain a private right of action as a "consumer" within the meaning of the Act.

The petitioner now appeals the circuit court's order granting summary judgment to the respondent.

**3.** In her brief, the petitioner presented two assignments of error: (1) The circuit court erred in concluding that a decedent's estate does not have standing to pursue West Virginia Consumer Credit and Protection Act claims and (2) the circuit court erred in concluding that Consumer

## II. STANDARD OF REVIEW

In syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Therefore, we will conduct a *de novo* review of the circuit court's summary judgment order.

## III. ANALYSIS

The dispositive issue before this Court is whether the decedent's claim under W. Va. Code § 46A-2-127(c) of the Act survives his death.[3] The petitioner argues on appeal that a claim brought under W. Va. Code § 46A-2-127(c) is sufficiently analogous to a claim for fraud under W. Va. Code § 55-7-8a(a), so that the claim survives the consumer's death.

As a preliminary matter, we note that the petitioner did not make this argument below either in her response to the defendant's motion for summary judgment or in the hearing before the circuit court. As a result, the circuit court did not address this argument in its motion granting summary judgment to the respondent. Generally, this Court will not address an issue raised for the first time on appeal and not decided by the circuit court. *See* syl. pt. 2, *Sands v. Sec. Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958) ("This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance."). We have explained these principles as follows:

> Ordinarily, a [party] who has not proffered a particular claim ... in the trial court may not unveil it on appeal. Indeed, if any principle is settled in this jurisdiction, it is that, absent the most extraordinary circumstances, legal theories not raised properly in the lower court cannot be broached for the first time on appeal. We have invoked this principle with a near religious fervor. This variant of the "raise

Credit and Protection Act claims do not survive the death of the plaintiff. Because this Court concludes that the decedent's claims do not survive his death under W. Va. Code § 55-7-8a(a), we do not find it necessary to address the standing issue.

or waive" rule cannot be dismissed lightly as a mere technicality. The rule is founded upon important considerations of fairness, judicial economy, and practical wisdom.

*State v. Miller*, 197 W.Va. 588, 597, 476 S.E.2d 535, 544 (1996). We have further explained, however, that "the 'raise or waive' rule, though important, is a matter of discretion. Thus, like most rules, this rule admits of an occasional exception." *Id.*, 197 W.Va. at 598, 476 S.E.2d at 545. In this case, we deem it preferable to address the issue in light of the fact that the facts of the case are sufficiently developed to permit meaningful review, and the issue was fully briefed by both parties.

The applicable law in this case is found at W. Va. Code § 55–7–8a(a) (1959), which provides:

> In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

The petitioner posits that the decedent's claim under W. Va. Code § 46A–2–127(c) is sufficiently analogous to deceit and fraud so as to survive the death of the claimant pursuant to W. Va. Code § 55–7–8a(a). In support of her position, the petitioner relies on *Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 285 S.E.2d 679 (1981), in which this Court found that a claim for retaliatory discharge is sufficiently related to an action for fraud and deceit so that the claim survives the death of the plaintiff. According to the petitioner, his claim under W. Va. Code 46A–2–127(c) is based on the same underlying principles of deceit and constructive fraud found persuasive in *Stanley*. The petitioner contends that the respondent's failure to disclose the name of the business entity making a demand for money upon the decedent's indebtedness was fraudulent, deceptive, and misleading. The petitioner contends that the respondent pur-

posefully omitted its name in order to mislead the decedent and to deceive him as to who was collecting the debt. The petitioner concludes that this conduct falls within the penumbra of deceit or fraud set forth in W. Va. 55–7–8a(a) and accepted by this Court in *Stanley*.

The respondent's position is that the decedent's claim under W. Va. Code 46A–2–127(c) is not analogous to deceit and fraud under the survival statute and does not survive the decedent's death. The respondent relies on this Court's decision in *Wilt v. State Automobile Mutual Insurance Company*, 203 W.Va. 165, 506 S.E.2d 608 (1998). The respondent explains that in *Wilt*, one of the arguments presented was that provisions contained in the West Virginia Unfair Trade Practices Act, W. Va. Code §§ 33–11–1 to 10, are sufficiently related to an action for deceit and fraud so that the two-year statute of limitations applies under W. Va. Code §§ 55–2–12 and 55–7–8a.[4] This Court rejected this argument in *Wilt* observing that viewing claims under the Unfair Trade Practice Act as being analogous to deceit and fraud is problematic because the type of conduct that constitutes a violation of the Unfair Trade Practices Act may include a variety of factual scenarios which lack the requisite elements of a fraud claim. The Court stated that while the traditionally recognized elements of a fraud claim might exist with regard to those acts of misrepresentation or deception that constitute a violation of the Unfair Trade Practices Act, other conduct that violates the Unfair Trade Practices Act does not amount to fraud. The respondent in this case contends that this Court's reasoning in *Wilt* applies equally to a claim brought under W. Va. Code § 46A–2–127(c) of the Consumer Credit and Protection Act. According to the respondent, a claim under W. Va. Code § 46A–2–127(c) does not necessarily constitute an action for deceit and fraud.

In order to determine whether a claim under W. Va. Code § 46A–2–127(c) is analogous to deceit and fraud, we will first

---

**4.** This Court indicated in *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W.Va. 588, 244 S.E.2d 321 (1978), that W. Va. Code § 55–7–8a and W. Va. Code § 55–2–12 are to be read in *pari materia*.

review our law concerning fraud. This Court has held that

[t]he essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

Syl. pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981). The petitioner specifically argues that a violation of W. Va. Code § 46A–2–127(c) is analogous to constructive fraud. This Court engaged in a discussion of constructive fraud in *Stanley* as follows:

Fraud may be either actual or constructive. The word "fraud" is a general term and construed in its broadest sense embraces both actual and constructive fraud. Actual fraud, or fraud involving guilt, is defined as anything falsely said or done to the injury of property rights of another. Actual fraud is intentional, and consists of intentional deception to induce another to part with property or to surrender some legal right, and which accomplishes the end designed.

Constructive fraud is a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.

Perhaps the best definition of constructive fraud is that it exists in cases in which conduct, although not actually fraudulent, ought to be so treated, that is, in which conduct is a constructive or *quasi fraud*, which has all the actual consequences and legal effects of actual fraud. Constructive fraud does not require proof of fraudulent intent. The law indulges in an assumption of fraud for the protection of valuable social interests based upon an enforced concept of confidence, both public and private.

169 W.Va. at 76–77, 285 S.E.2d at 682–83 (citations and footnote omitted). This Court has also described constructive fraud as resting upon the

presumption and rests less upon furtive intent than does moral fraud. It is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place. The conscience is not necessarily affected by it. Indeed, it has been said that it generally involves a mere mistake of fact. Hence, the terms "constructive fraud" and "legal fraud" both connote that in certain circumstances, one may be charged with the consequences of his words and acts, as though he has spoken or acted fraudulently, although properly speaking, his conduct does not merit this opprobrium.

*Miller v. Bridge Co.*, 123 W.Va. 320, 335, 15 S.E.2d 687, 695 (1941), quoting 23 *Amer. Jur.*, 756.

Based on our precedent, essentially in order for a plaintiff to prove constructive fraud, he or she must prove the consequences of actual fraud, but does not have to prove a fraudulent intent.

Application of the above description of constructive fraud compels this Court to conclude that a claim brought under W. Va. Code § 46A–2–127(c) is not sufficiently analogous to an action for deceit and fraud so as to survive the death of the consumer pursuant to W. Va. Code § 55–7–8a(a). While the traditional elements of constructive fraud as outlined above may well apply to an act that constitutes a violation of W. Va. Code § 46A–2–127(c), other conduct that violates W. Va. Code § 46A–2–127(c) does not. Therefore, we now hold that a claim brought under W. Va. Code § 46A–2–127(c) (1997) of the West Virginia Consumer Credit and Protection Act is not sufficiently analogous to a claim for deceit and fraud so as to survive the death of the consumer pursuant to W. Va. Code § 55–7–8a(a) (1959).

The decedent's claim is an example of conduct that does not constitute constructive fraud. In his complaint below, the decedent stated that the respondent violated W. Va. Code § 46A–2–127(c) by "failing to clearly disclose the name of the business entity making a demand for money upon Plaintiff's indebtedness." West Virginia Code § 46A–7–127(c) prohibits "[t]he failure to clearly disclose the name and full business address of

the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money." There are no facts alleged in the decedent's complaint that explain how the respondent's conduct violated W. Va. Code § 46A–2–127(c).[5] However, in the petitioner's reply brief to this Court, the petitioner indicated that the facts underlying the alleged violation of W. Va. Code § 46A–2–127(c) are

> that the Respondent failed to clearly disclose its identity, i.e. name, in telephone calls to the Petitioner in the Caller ID readout, but instead displayed "Toll Free Number" in order that the Petitioner would be deceived and misled that it was the Respondent, a debt collector, that was calling the Petitioner.

Presuming that this complained of practice constitutes a violation of W. Va. Code § 46A–2–127(c), it certainly does not constitute constructive fraud. Significantly, there is no indication that the alleged misrepresentation was material and false. In other words, there is no indication that the respondent's employee was not calling from a toll free number. Also, there is no indication that the decedent relied upon the alleged misrepresentation and was damaged thereby. Therefore, we reject the petitioner's argument that the claim brought under W. Va. Code 46A–2–127(c) is sufficiently analogous to a claim for deceit and fraud under W. Va. Code § 55–7–8a(a) to survive the decedent's death.[6]

## IV. CONCLUSION

For the reasons set forth above, this Court affirms the June 18, 2015, order of the Circuit Court of Putnam County that granted summary judgment to Respondent Professional Bureau of Collections of Maryland, Inc. in an action brought against it by Petitioner Diane Horton as Executrix for Gene Ray Dudding.

Affirmed.

CHIEF JUSTICE KETCHUM, JUSTICE WORKMAN, and JUSTICE LOUGHRY concur and reserve the right to file concurring opinions.

JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.

LOUGHRY, J., joined by KETCHUM, C.J. and WORKMAN, J., concurring:

■ I concur in the majority's conclusion that the petitioner's claim pursuant to West Virginia Code § 46A–2–127(c) does not survive the death of her decedent. I write separately, however, to clarify that the majority's analysis yields equally to the broader conclusion that a cause of action pursuant to the unfair debt collection practices provisions of the West Virginia Consumer Credit and Protection Act (hereinafter "WVCCPA" or "the Act"), West Virginia Code §§ 46A–2–122 through 129a, is not survivable. For reasons that are unclear and despite the petitioner's assertion of a variety of violations of the unfair debt collection provisions of the WVCCPA, the majority unnecessarily restricts its holding to Section 127(c). Clearly, however, a cause of action arising under any portion of the unfair debt collection practices

5. In his complaint, the decedent essentially asserted that after he became in arrears on a debt, the respondent began to engage in collection of the debt through the use of telephone calls, written, and other communications to the decedent; that the decedent retained counsel to represent him in connection with the debt; that the respondent caused a telephone call to be placed to the decedent's home at which time the decedent informed the respondent's employee that he was represented by counsel and gave the employee his counsel's name and telephone number; and that the respondent continued to make telephone calls to the decedent after being informed that the decedent was represented by counsel.

6. West Virginia Code § 55–7–8a(a) also provides that "causes of action for injuries to property, real or personal" survive the death of the plaintiff. According to the petitioner, the decedent incurred attorney fees and costs of litigation in bringing his action against the respondent which he is entitled to recover under the Act. The petitioner contends that these attorney fees and costs constitute injuries to property rights that survive death under W. Va. Code § 55–7–8a(a). Having determined that decedent's claim under .W. Va. Code § 46A–2–127(c) did not survive his death, we find no merit to this claim.

Finally, the petitioner argues that "[i]t is manifestly unjust and against public policy to allow wrongdoers to escape due to the death of their victim." We find no merit to this argument. The survival of causes of action is governed by statute and not public policy as set forth therein.

provisions of the WVCCPA does not survive by virtue of the unmistakable statutory language and application of our survivability statute, West Virginia Code § 55–7–8a(a).

As set forth by the majority, the petitioner alleges that prior to his death, the petitioner's decedent, Mr. Dudding, received telephone calls from the respondent in an attempt to collect a debt. The petitioner alleges that the respondent made these calls without properly identifying itself and after being advised that Mr. Dudding was represented by counsel. Mr. Dudding filed a complaint alleging violations of the WVCCPA, specifically West Virginia Code §§ 46A–2–125(d) (prohibiting calling any person more than thirty times per week or engaging in telephone conversation more than ten times per week with intent to annoy, abuse, oppress or threaten),[1] -128(e) (prohibiting communication with a consumer seventy-two hours after written notice that the consumer is represented by an attorney), -127(a) (prohibiting use of anything other than a business' true name while collecting debt), and 127(c) (prohibiting failure to disclose the name and business address of the collection agency). The majority focuses on the petitioner's Section 127(c) claim based on the respondent's purported failure to identify itself on caller ID and concludes that such an act is not inherently fraudulent or deceitful, and therefore, the Section 127(c) claim is not afforded survivability pursuant to West Virginia Code § 55–7–8a(a). The majority expressly notes that the petitioner asserted additional violations of the unfair debt collection practices provisions of the WVCCPA that she claims are analogous to fraud and deceit, but "fails to develop these arguments." In spite of this failure to develop an argument in support of

their survivability and the clear presentation of the larger issue of survivability of unfair debt collection claims, the majority simply side-steps the issue. To avoid any suggestion that *other* provisions of the unfair debt collection practices provisions of the WVCCPA may be survivable, I write separately to clarify that the majority's analysis does in fact serve to render a cause of action under any of these provisions abated upon death of the consumer.

Although not addressed by the majority, the statutory language of the unfair debt collection practices provisions of the WVCCPA clearly indicates that an estate may not maintain a cause of action for violations thereof. West Virginia Code § 46A–5–101(1) creates the cause of action for violation of these provisions. This statute states plainly that, upon commission of a "prohibited debt collection practice ... the *consumer* has a cause of action...." (emphasis added). *Id.* West Virginia Code § 46A–2–122 sets forth its own definitions specifically applicable to the unfair debt collection practices provisions of the WVCCPA: "For purposes of this section and sections one hundred twenty-three ... [through] one hundred twenty-nine-a ... of this article, the following terms shall have the following meanings...." It then defines "consumer" as "any *natural person* obligated or allegedly obligated to pay any debt." W.Va. Code § 46A–2–122(a) (emphasis added). Therefore, a cause of action for violation of "prohibited debt collection practices" belongs exclusively to the "consumer," who for purposes of such claim can only be a "natural person." As such, it is clear that an unfair debt collection practices act claim may not be maintained or vindicated by an estate.[2]

---

1. The wording of this subsection in effect at the time Mr. Dudding filed suit prohibited only "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number." W.Va. Code § 46A–2–125 (1974). This subsection was amended in 2015 to, among other things, include quantitative benchmarks for such calls, as indicated above.

2. The petitioner argues that because she was substituted as the party plaintiff as Mr. Dud-

ding's personal representative, rather than "the estate," and is a natural person, she satisfies the requirements of the statute. However, this Court has held that "simply because a claimant falls into one of the categories of persons listed in Rule 17(a) [as a real party in interest] does not end the analysis; the claimant must still establish they have a right under the substantive law to initiate a lawsuit to enforce some right." *Keesecker v. Bird*, 200 W.Va. 667, 677, 490 S.E.2d 754, 764 (1997). As discussed *infra*, the petitioner has no substantive right to advance a claim that does not survive her decedent. Regardless, despite be-

Notwithstanding this uncomplicated statutory construction and interpretation, West Virginia's survival statute compels the same conclusion. "A cause of action created by statute survives when and only when some provision for its survival is made in the statute itself, or in some other statute." 1 C.J.S. *Abatement and Revival* § 151, at 206 (1985). The WVCCPA itself contains no statutory provision for survivability. That fact alone is significant. As the Texas Supreme Court observed regarding its hybrid Deceptive Trade Practices Act-Consumer Protection Act, "we must at least begin our analysis by noting that the Legislature clearly knew how to indicate that warranty claims were assignable, but did not do so in the DTPA." *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004).[3]

Looking beyond the WVCCPA's silence, however, our survival statute further supports a lack of survivability. At common law, "personal" tort actions typically did not survive and actions for breach of contract or which affected property interests did survive. 1 Am.Jur.2d, Abatement, Survival, and Revival § 56 ("[A] cause of action sounding in tort generally does not survive unless property or contract rights are involved."). However, West Virginia Code § 55-7-8a(a), enacted in 1959 and entitled "Actions which survive; limitations; law governing such actions," ameliorated the harsh common law effect on personal injury tort actions and provides:

> In addition to the causes of action which survive at common law, causes of action for injuries to property, real or personal, or injuries to the person and not resulting in

death, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

In short, property damage claims, personal injury claims, and actions for deceit/fraud specifically survive as well as anything which "survive[s] at common law."[4]

Albeit only briefly discussed by the majority, this Court has had occasion to assess the survivability of a highly comparable statutory enactment, which appropriately guides our analysis.[5] In *Wilt v. State Automobile Mutual Insurance Company*, 203 W.Va. 165, 506 S.E.2d 608 (1998), the Court sought to resolve the issue of the statute of limitations for claims brought under the Unfair Trade Practices Act ("UTPA"). The *Wilt* Court analyzed whether a UTPA claim was "analogous to a claim for fraud" and/or deceit and therefore survivable, in which event it would be afforded a two-year statute of limitations. *Id.* at 167, 506 S.E.2d at 610. Upon analysis, the Court expressly rejected the notion that a UTPA claim was analogous to a claim for fraud, stating, "Viewing claims under the Act as necessarily fraudulent in nature is problematic, however, because the type of conduct that constitutes an unfair settlement claim may include a variety of factual scenarios which lack the requisite elements of a fraud claim." *Id.* The Court then examined the variety of factual bases for violations of the UTPA including failure to timely act on an investigation, failure to implement procedures, and misrepresentation of pertinent facts relating to coverage. *Id.* at 168, 506 S.E.2d at 611. The Court acknowledged that while "the traditionally recognized elements

---

ing a "natural person," the petitioner is not personally "obligated or allegedly obligated to pay" the debt of Mr. Dudding. W.Va. Code § 46A–2–122(a). Rather, as personal *representative*, she performs a ministerial function to administer his estate, which may or may not include ensuring that the obligations of the estate are fulfilled.

3. The fact that assignability has often been viewed as coterminous with survivability makes this observation equally applicable to the issue at bar.

4. The petitioner does not argue that WVCCPA claims survive at common law, nor that such

claims are sufficiently akin to a personal injury to survive. The petitioner makes a cursory assertion that the petitioner's claim for attorney's fees under the WVCCPA are an "injury to property rights" without any supporting authority.

5. In fact, the claims actionable under unfair trade practices and consumer credit acts are so comparable, Texas has a hybrid Unfair Trade Practices and Consumer Credit Protection Act called the "Deceptive Trade Practices-Consumer Protection Act." *See* Tex. Business & Commerce Code Ann. § 17.41 (1973).

of a fraud claim might exist with regard to those acts of misrepresentation or deception that constitute an unfair settlement claim, other conduct that qualifies as an unfair settlement practice clearly does not amount to fraud." *Id.* The Court then identified additional deception-neutral prohibitions under the UTPA which were not "aimed strictly at the elimination of conduct that is fraudulent in character," and concluded that a UTPA claim was not tantamount to fraud and/or deceit for purposes of survivability. *Id.* at 169, 506 S.E.2d at 612.

The applicability of this rationale is markedly demonstrated in the separately designated portions of the unfair debt collection practices provisions of the WVCCPA themselves. Section 124 outlines acts that are forbidden as "Threats or coercion." Section 125 similarly describes acts that are forbidden as "Oppression and abuse." Section 126 forbids actions that are deemed "Unreasonable publication." Section 128 proscribes "Unfair or unconscionable means" as enumerated therein. Section 129a prohibits what it describes as "Deceptive or oppressive telephone calls." Without question, these provisions describe conduct that has been deemed undesirable as a public policy matter and is therefore prohibited by this enactment. They are plainly not, however, all entrenched in fraud and/or deceit, as evidenced by their titles alone.

Only Section 127, entitled "Fraudulent, deceptive or misleading representations," contains violations that are self-described as falling within the ambit of fraud and/or deceit. However, even these specifically designated "fraudulent" and "deceptive" actions describe acts that, as the majority correctly notes, are not inherently and/or exclusively steeped in fraud. For instance, in Subsection (c), the

**6.** In this case, the petitioner alleges that the respondent's purported use of the designation "Toll Free Number" on a caller ID is the use of a "business, company or organization name … other than the true name of the debt collector[ ]" in violation of Section 127(a).

**7.** The District Court also astutely observed that this Court has declined to find statutory survivability in the majority of cases, making *Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 285 S.E.2d 679 (1981), upon which the petitioner heavily relies, an outlier. *See Thompson v. Branches–Domestic*

mere "*failure* to clearly disclose the name and full business address" of the debt collector or owner of the claim is deemed a violation. (Emphasis added). A "failure" to do something may obviously be wholly innocent and/or negligent, at best. Moreover, as the majority also notes, actions such as those alleged herein which are not false, yet ostensibly violate these provisions,[6] further suggest that even this Section does not derive of exclusively fraudulent or deceitful actions.

The wisdom of the *Wilt* rationale, which requires examination of the content and purpose of these statutory provisions, is patent and accordingly has been applied by a federal district court to these same provisions of the WVCCPA. In *Finney v. MIG Capital Management, Inc.*, No. Civil Action 2:13–02778, 2014 WL 1276159 (S,D.W. Va. Mar. 27, 2014), the District Court found that the WVCCPA claims alleged therein were not survivable upon application of the *Wilt* analysis. After careful examination of this Court's survivability jurisprudence, the District Court correctly observed

[C]ertain deceptive practices may be prohibited by statute because they are unfair, without necessarily amounting to fraud. The same is true here. It may be "unfair or unconscionable" for a debt collector to contact directly a consumer known to be represented by counsel. W. Va. Code § 46A–2–128(e). But that statutory designation does not transform the underlying conduct into a common law claim for fraud.

*Id.* at *9 (citations omitted);[7] *see also Motzer Dodge Jeep Eagle, Inc. v. Ohio Atty. Gen.*, 95 Ohio App.3d 183, 642 N.E.2d 20 (1994) (finding claim unfair or deceptive sales practices did not survive consumer's death); *Ferguson v. Charleston Lincoln Mercury, Inc.*, 349

*Violence Shelter of Huntington, W.Va., Inc.*, 207 W.Va. 479, 534 S.E.2d 33 (2000) (holding statutory breach of confidentiality has one-year statute of limitations and is not survivable); *Slack v. Kanawha County Housing and Redevelopment Authority*, 188 W.Va. 144, 423 S.E.2d 547 (1992) (finding invasion of privacy did not survive); *Cavendish v. Moffitt*, 163 W.Va. 38, 253 S.E.2d 558 (1979) (finding claim for libel does not survive); *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W.Va. 588, 244 S.E.2d 321 (1978) (finding action to collect a civil penalty under the State's usury statute does not survive).

S.C. 558, 564 S.E.2d 94 (2002) (finding cause of action alleging unfair methods of competition and unfair or deceptive acts or practices do not survive); *Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 401 (Tex. App. 2000) ("A representative of an estate is not a 'consumer' under the DTPA because a DTPA cause of action does not survive the death of the original consumer"); *First Nat. Bank of Kerrville v. Hackworth*, 673 S.W.2d 218 (Tex. App. 1984) (finding cause of action under Deceptive Trade Practices Act did not survive death of customer). It is therefore plain that our survival statute likewise fails to afford survivability to unfair debt collection practices claims under the WVCCPA.

Finally, I note the petitioner's assertion that it would simply be "manifestly unjust" to disallow survivability, thereby allowing wrongdoers under the Act to "escape due to the death of their victim." The petitioner urges that this Court should "not send such a message." However, the petitioner misapprehends this Court's function insofar as determining survivability is concerned. It is not for this Court to assess the wisdom of the survivability statute, but rather to apply it; this Court is not assembled for the purpose of "sending messages." It is the Legislature's function to set policy. Moreover, if mere "unfairness" commands survivability, our survival statute would be rendered meaningless. Any cause of action that does not survive under our statute allows the alleged wrongdoer to "escape"; the Legislature, however, has made a policy determination to allow certain actions to abate upon death. As this Court has observed countless times, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 692, 408 S.E.2d 634, 642 (1991) (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)).

Accordingly, for the reasons set forth above, I respectfully concur.

Davis, Justice, dissenting:

The majority's opinion in this case finds that Mr. Dudding's claims against Professional Bureau of Collections of Maryland, Inc. ("the Bureau") do not survive his death. Even though the Bureau repeatedly called Mr. Dudding using a number that masked its true identity, persistently called Mr. Dudding while he was on his deathbed, blatantly ignored repeated requests to call Mr. Dudding's attorney during Mr. Dudding's final days in hospice care, and continued to call Mr. Dudding's cell phone after his passing, the majority's decision herein effectively excuses the Bureau for all of these nefarious debt collection practices. This result is unjust and has produced an opinion with which I cannot agree. Accordingly, I dissent from the majority's decision in this case.

### A. Survivability

In its decision of the case *sub judice*, the majority concludes that Mr. Dudding's claims under the West Virginia Consumer Credit and Protection Act ("CCPA"), W. Va. Code § 46A–1–101 *et seq.*, do not survive his death because they do not sufficiently allege a cause of action for fraud. Pursuant to W. Va. Code § 55–7–8a(a) (1959) (Repl. Vol. 2016),

[i]n addition to the causes of action which survive at common law, *causes of action* for injuries to property, real or personal, or injuries to the person and not resulting in death, or *for deceit or fraud, also shall survive*; and such actions may be brought notwithstanding the death of the person entitled to recover or the death of the person liable.

(Emphasis added). Under the facts of the instant case, Ms. Horton, the executrix of Mr. Dudding's estate, contends that the CCPA claims originally brought by Mr. Dudding sound in fraud and deceit, and, as such, they survive his death. In rejecting this argument, the majority opines that Mr. Dudding has not sufficiently proved the elements of a cause of action for fraud. *See* Syl. pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981) ("The essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was

justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.' *Horton v. Tyree*, 104 W.Va. 238, 242, 139 S.E. 737 (1927).")." This, however, is the wrong analysis.

The majority makes much of the fact that Mr. Dudding's claims have not established the essential elements of a cause of action for fraud. This is a correct assessment of Mr. Dudding's case, but it completely misses the mark of the relevant inquiry. Mr. Dudding has not sustained his burden of proof for a cause of action alleging fraud *because he never asserted a cause of action for fraud in his complaint.* Instead, the counts appearing in Mr. Dudding's complaint claim that the Bureau violated the CCPA, committed common law negligence, and intentionally inflicted emotional distress. As such, the operative inquiry is not whether Mr. Dudding has satisfied the elements for a cause of action in fraud, but rather whether the CCPA violations he has alleged are sufficiently analogous to fraud or deceit such that these claims survive his death. This correct analysis is completely in keeping with the central purpose of the West Virginia Consumer Credit and Protection Act:

> The purpose of the CCPA is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action. As suggested by the court in *State v. Custom Pools*, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose." Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended. *Kisamore v. Coakley*, 190 W.Va. 147, 437 S.E.2d 585 (1993) (per curiam); *Hubbard v. SWCC and Pageton Coal Co.*, 170 W.Va. 572, 295 S.E.2d 659 (1981); *Wheeling Dollar Savings & Trust Co. v. Singer*, 162 W.Va. 502, 250 S.E.2d 369 (1979).

*State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 777, 461 S.E.2d 516, 523 (1995) (emphasis added). Under the facts of this case, it is clear that Mr. Dudding sufficiently pled CCPA claims that sound in fraud and deceit.

This Court extensively has considered the meaning of fraud as that term is used in the survivability statute, W. Va. Code § 55–7–8a(a):

> *Fraud has been defined as including all acts, omissions, and concealments which involve a breach of legal duty*, trust or confidence justly reposed, *and which are injurious to another*, or by which undue and unconscientious advantage is taken of another. *See, Dickel v. Smith*, 38 W.Va. 635, 18 S.E. 721 (1893); 8B Michie's Jurisprudence, *Fraud and Deceit* §§ 1 and 2 (1977); 37 Am. Jur. 2d *Fraud and Deceit* § 1 (1968).

> Fraud may be either actual or constructive. The word "fraud" is a general term and construed in its broadest sense embraces both actual and constructive fraud. Actual fraud, or fraud involving guilt, is defined as anything falsely said or done to the injury of property rights of another. *Hulings v. Hulings Lumber Co.*, 38 W.Va. 351, 18 S.E. 620 (1893). *Actual fraud is intentional, and consists of intentional deception to induce another to part with property or to surrender some legal right, and which accomplishes the end designed.* *Miller v. Huntington & Ohio Bridge Co.*, 123 W.Va. 320, 15 S.E.2d 687 (1941). *See also, Steele v. Steele*, 295 F.Supp. 1266 (S.D. W. Va. 1969); *Bowie v. Sorrell*, 113 F.Supp. 373 (W.D. Va. 1953).

> *Constructive fraud is a breach of a legal or equitable duty, which*, irrespective of moral guilt of the fraud feasor, *the law declares fraudulent, because of its tendency to deceive others*, to violate public or private confidence, *or to injure public interests. Miller v. Huntington & Ohio Bridge Co.*, 123 W.Va. 320, 15 S.E.2d 687 (1941). *See also, Steele v. Steele*, 295 F.Supp. 1266 (S.D. [W.] Va. 1969); *Bowie v. Sorrell*, 113 F.Supp. 373 (W.D. Va. 1953); *Loucks v. McCormick*, 198 Kan. 351, 424 P.2d 555 (1967); *Bank v. Board of Education of City of New York*, 305 N.Y. 119, 111 N.E.2d 238 (1953); *Braselton v. Nicolas & Morris*, 557 S.W.2d 187 (Tex. Civ. App. 1977).

Perhaps the best definition of constructive fraud is that it exists in cases in which conduct, although not actually fraudulent, ought to be so treated, that is, in which conduct is a constructive or *quasi fraud*, which has all the actual consequences and legal effects of actual fraud. *In Re Arbuckle's Estate*, 98 Cal.App.2d 562, 220 P.2d 950 (1950). Constructive fraud does not require proof of fraudulent intent. The law indulges in an assumption of fraud for the protection of valuable social interests based upon an enforced concept of confidence, both public and private. *Perlberg v. Perlberg*, 18 Ohio St.2d 55, 247 N.E.2d 306 (1969)....

The problem here is that our survivability statute, W. Va. Code, 55–7–8a, uses broad terminology as to what types of causes of actions will survive. *In determining whether a particular cause`of action fits into one of these broad categories, we must of necessity apply the general terms to the particular case. ... [W]e recognize that as a general rule a survival statute such as W. Va. Code, 55–7–8a, is to be liberally construed as it is remedial in nature. [Wheeling ex rel.] Carter v. American Casualty Co.*, 131 W.Va. 584, 590, 48 S.E.2d 404, 408 (1948); *cf. Wilder v. Charleston Transit Co.*, 120 W.Va. 319, 197 S.E. 814 (1938); 1 Am. Jur. 2d *Abatement, Survival & Revival* § 54 (1962).

*Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 76–78, 285 S.E.2d 679, 682–83 (1981) (emphasis added; footnote omitted).

From the allegations set forth in Mr. Dudding's complaint, it is clear that the subject CCPA violations averred therein sound in fraud so as to render them survivable under W. Va. Code § 55–7–8a(a). Specifically, the complaint alleges that

The Defendant [the Bureau] has engaged in repeated violations of Article 2 of the *West Virginia Consumer Credit and Protection Act*, including but not limited to,

    a. engaging in unreasonable or oppressive or abusive conduct towards the Plaintiff [Mr. Dudding] in connection with the attempt to collect a debt by placing telephone calls to the Plaintiff in violation of *West Virginia Code* § 46A–2–125;

    b. causing Plaintiff's phone to ring or engaging persons, including the Plaintiff, in telephone conversations repeatedly or continuously or at unusual times or at times known to be inconvenient, with the intent to annoy, abuse or oppress the Plaintiff in violation of *West Virginia Code* § 46A–2–125(d);

    c. using unfair or unconscionable means to collect a debt from Plaintiff in violation of *West Virginia Code* § 46A–2–128(e) by communication with Plaintiff after it appeared that the Plaintiff was represented by an attorney and the attorney's name and address were known or could be easily ascertained;

    d. failing to clearly disclose the name of the business entity making a demand for money upon Plaintiff's indebtedness in violation of *West Virginia Code* § 46A–2–127(a) and (c).

Not only did the Bureau purposely conceal its identity during its repeated telephone calls to Mr. Dudding, but it may also be presumed that, by its blatant and continuous violations of the CCPA, the Bureau sought to usurp Mr. Dudding's rights as a consumer that are protected by the CCPA and that the CCPA allows him to enforce. *See generally* W. Va. Code § 46A–5–101(1) (2015) (Repl. Vol. 2015) (affording consumers cause of action and remedies for violations of CCPA). Finally, it goes without saying that the Bureau's actions have had an injurious effect upon Mr. Dudding's property rights: but for the Bureau's repeated statutory violations, Mr. Dudding would not have had to hire a lawyer, incur legal fees, or sustain the costs of litigating his CCPA claims against the Bureau. Because the claims set forth in Mr. Dudding's complaint alleging violations of the CCPA sound in fraud, such causes of action, by statutory definition, survive his death. *See* W. Va. Code § 55–7–8a(a).

### B. Standing

Having established that Mr. Dudding's CCPA claims survive his death, the next inquiry is whether Ms. Horton, as Mr. Dudding's personal representative, has standing

to prosecute such claims on his behalf. Pursuant to the pertinent authorities, Ms. Horton has standing to pursue Mr. Dudding's claims in his stead.

Standing to bring a cause of action under the CCPA is afforded to consumers. *See generally* W. Va. Code § 46A–5–101. In turn, "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." W. Va. Code § 46A–2–122(a) (1996) (Repl. Vol. 2015). Although the Legislature has not defined the term "natural person," courts construing this term understand "natural person" to mean a "human being." *See Shawmut Bank, N.A. v. Valley Farms*, 222 Conn. 361, 366, 610 A.2d 652, 654–55 (1992) ("[N]atural person ... clearly means a human being[.]"); *Industry to Industry, Inc. v. Hillsman Modular Molding, Inc.*, 247 Wis.2d 136, 142, 633 N.W.2d 245, 249 (Ct. App. 2001) ("[A] 'natural person' is defined as a 'human being[.]' " (citation omitted)), *aff'd*, 252 Wis.2d 544, 644 N.W.2d 236 (2002).

It goes without saying that Ms. Horton is a human being, and, as such, a "natural person" within the contemplation of W. Va. Code § 46A–2–122(a). Moreover, as the executrix of Mr. Dudding's estate, Ms. Horton is vested with the authority to bring and defend legal claims on Mr. Dudding's behalf: "[t]he executor or administrator is the proper representative of the personal estate, and generally all suits should be brought by and against him in relation thereto." Syl. pt. 10, in part, *Richardson v. Donehoo*, 16 W.Va. 685 (1880). *Accord* W. Va. Code § 2–2–10(j) (1998) (Repl. Vol. 2013) ("The words 'personal representative' include the executor of a will ... and every other curator or committee of a decedent's estate for or against whom suits may be brought for causes of action which accrued to or against such decedent[.]"); W. Va. Code § 44–1–22 (1923) (Repl. Vol. 2014) ("A personal representative may sue or be sued upon any judgment for or against, or any contract of or with, his decedent."). As such, Ms. Horton is the proper party to substitute for Mr. Dudding upon his death during the pendency of the instant proceedings.

Because I do not agree with the majority's interpretation and application of the law governing its decision in this case, I dissent.